ACCEPTED
03-14-00098-CV
8394340
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/29/2015 2:21:15 PM
JEFFREY D. KYLE
CLERK



**KEN PAXTON**

ATTORNEY GENERAL OF TEXAS

RANCE CRAFT
ASSISTANT SOLICITOR GENERAL

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/29/2015 2:21:15 PM
JEFFREY D. KYLE
Clerk

(512) 936-2872

RANCE.CRAFT@TEXASATTORNEYGENERAL.GOV

December 29, 2015

Mr. Jeffrey D. Kyle, Clerk          **Via File & Serve Xpress**
Third Court of Appeals
P.O. Box 12547
Austin, Texas 78711-2547

Re: *Machete's Chop Shop, Inc. v. The Texas Film Commission; Heather Page, as Director of the Texas Film Commission; The Music, Film, Television, and Multimedia Office; Office of the Governor; and Greg Abbott, as Governor of the State of Texas*, No. 03-14-00098-CV

Dear Mr. Kyle:

Appellees The Texas Film Commission; Heather Page, as Director of the Texas Film Commission; The Music, Film, Television, and Multimedia Office; Office of the Governor; and Greg Abbott, as Governor of the State of Texas (collectively, "the State Defendants"), provide this notice of a recent decision by the United States Court of Appeals for the Fifth Circuit in a legally and factually related case that addresses some of the issues in this appeal. *Machete Productions, L.L.C. v. Page*, No. 15-50120, slip op. (5th Cir. Dec. 28, 2015) (copy attached). Please distribute this letter to the Justices of the panel assigned to this case.

*Machete Productions* also arose from the denial of a production company's application for a grant from the Moving Image Industry Incentive Program. *Id.* at 1-3. While the appeal before this Court concerns the film "Machete," *Machete Productions* involved that film's sequel, "Machete Kills," and a different production company. *Id.* at 3. That company filed suit asserting various claims for declaratory, injunctive, and monetary relief related to the grant denial. *Id.* at 4. The district court dismissed all claims, *id.*, and the Fifth Circuit affirmed, *id.* at 13.

Three of the Fifth Circuit's holdings bear directly on this appeal.

*First*, the court held that the production company lacked the property interest necessary to support its claim under the Due Process Clause of the Fourteenth Amendment because the "Program's statutes and regulations make clear that grants were discretionary" and "'[d]iscretionary statutes do not give rise to constitutionally protectable interests.'" *Id.* at 10-11 (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001)). The State Defendants have made the same argument, citing the same authority, as grounds for affirming the dismissal of the due-process and due-course-of-law claims in this case. Appellees' Br. 37, 58-60. In addition, the Fifth Circuit's conclusion that Program grants are discretionary bolsters the State Defendants' arguments here that state officials did not act ultra vires in denying the "Machete" grant. *See id.* at 23-34.

*Second*, the court rejected the production company's claim that "its due process rights were violated due to the vagueness of the Incentive Program's statute and regulations," explaining that, "'when the [g]overnment is acting as a patron rather than as sovereign, the consequences of imprecision are not constitutionally severe.'" *Machete Productions*, slip op. at 11-12 (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588-89 (1998)). Again, the State Defendants have made the same argument, citing the same authority, as grounds for affirming the dismissal of the due-process and due-course-of-law claims in this case. Appellees' Br. 37, 54-58.

*Third*, the court held that the production company's claims against the Commission's Director in her official capacity seeking "retrospective injunctive relief for an Incentive Program grant are barred." *Machete Productions*, slip op. at 6. The retrospective/prospective distinction mattered because the production company had asserted its constitutional claims through 42 U.S.C. § 1983, which affords only prospective injunctive and declaratory relief for official-capacity claims. *Id.* at 4, 6 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 & n.10 (1989)). That same distinction matters in this appeal because, as the State Defendants have explained, the claims aimed at ultimately securing a Program grant for "Machete" are likewise retrospective and are thus barred by sovereign immunity under Texas law. Appellees' Br. 41-48, 51-52, 68-69.

Thank you for your assistance with this matter.

Sincerely,

/s/ Rance Craft

Rance Craft
Assistant Solicitor General
Texas Bar No. 24035655

RLC/vlc

cc:    D. Todd Smith (*via File & Serve Xpress e-service*)

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50120

United States Court of Appeals
Fifth Circuit

**FILED**

December 28, 2015

Lyle W. Cayce
Clerk

MACHETE PRODUCTIONS, L.L.C.,

        Plaintiff - Appellant

v.

HEATHER PAGE, in her official capacity as the current Director of the Texas
Film Commission; DAVID MORALES, in his individual capacity,

        Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, HAYNES, and COSTA, Circuit Judges.

HAYNES, Circuit Judge:

Machete Productions, L.L.C., ("Machete") appeals the district court's dismissal on the pleadings of Machete's claims that a Texas film incentive program was unconstitutional under the First Amendment, Fourteenth Amendment, and Texas Constitution. For the reasons that follow, we AFFIRM the district court's judgment.

## I. Background

The Moving Image Industry Incentive Program (the "Incentive Program") is a grant program established by the Texas legislature for production companies that produce movies in Texas. *See* TEX. GOV'T CODE ANN. § 485.022(a) (West 2012). The Incentive Program is administered by the

No. 15-50120

Music, Film, Television and Multimedia Office (the "Office") in order to "promote the development of the film, television, and multimedia industries in [Texas]." *Id.* §§ 485.002, 485.004(b).  The purpose of the Incentive Program is to "increase employment opportunities for Texas industry professionals, tourism and to boost economic activity in Texas cities and the overall Texas economy."  13 TEX. ADMIN. CODE § 121.1(b)(1).

To qualify for a grant, a production company must meet certain statutory requirements.  TEX. GOV'T CODE ANN. § 485.023 (West 2012).  Even if a production company meets these requirements,

> [t]he [O]ffice is not required to act on any grant application and may deny an application because of inappropriate content or content that portrays Texas or Texans in a negative fashion, as determined by the [O]ffice, in a moving image project.  In determining whether to act on or deny a grant application, the [O]ffice shall consider general standards of decency and respect for the diverse beliefs and values of the citizens of Texas.

*Id.* § 485.022(e).  The Office assigned administration of the Incentive Program, including development of appropriate procedures, to one of its divisions, the Texas Film Commission (the "Commission").  The Commission implemented the Incentive Program under Chapter 121 of the Texas Administrative Code, which essentially parrots the enabling statute by noting that the Commission may deny an application based on "inappropriate content or content that portrays Texas or Texans in a negative fashion."[1]  13 TEX. ADMIN. CODE

---

[1] The regulation states: "Not every project will qualify for a grant.  The Texas Film Commission (Commission) is not required to act on any application and may deny an application or eventual payment on an application because of inappropriate content or content that portrays Texas or Texans in a negative fashion, as determined by the Commission, in a project.  In determining whether to act on or deny an application, the Commission shall consider general standards of decency and respect for the diverse beliefs and values of the citizens of Texas."  13 TEX. ADMIN. CODE § 121.4(b).

§ 121.4(b).  The regulations also permit the Commission to disqualify a grant application "at any time if a project does not meet the necessary requirements" or if an application is "incomplete."  *Id.* § 121.10(a).

According to Machete, the Incentive Program's former Commissioner, Bob Hudgins, found the standards described in the statute and administrative regulations too difficult to apply, and thus instituted a policy by which a grant would only be denied if a film purported to portray historical events, but did so inaccurately.  Machete asserts that few, if any, films were denied funding under this standard.

Machete is a film production company that produced the film at issue, *Machete Kills*.  *Machete Kills* is the sequel to *Machete*, a film produced by a separate entity, Machete ChopShop ("ChopShop").  In 2009, ChopShop received preliminary approval for a grant under the Incentive Program for *Machete*.  However, after a political controversy over the film broke out in the summer of 2010, the Commission denied ChopShop's application for a grant due to "inappropriate content or content that portrays Texas or Texans in a negative fashion."

Despite this denial, Machete later decided to apply for a grant for *Machete Kills*.  Before Machete submitted its application, Governor Rick Perry's general counsel, David Morales, communicated to a producer of *Machete Kills* that the film would never receive an Incentive Program grant due to the perceived political nature and content of the film.  Nevertheless, Machete filed an application that projected to meet the spending and employment criteria for a project as outlined by the Incentive Program. Morales, then acting as the designated director of the Commission, denied the application in June of 2012 because of "inappropriate content."

Machete sued the current and former directors of the Commission in their official and individual capacities in Texas state court.  The directors of

the Commission then removed to the U.S. District Court for the Western District of Texas.  Machete filed an amended complaint suing Morales in his official and individual capacity under 42 U.S.C. § 1983 for allegedly violating the First and Fourteenth Amendments of the U.S. Constitution.  Machete sought prospective injunctive relief enjoining the Commission from enforcing the Incentive Program in the future, as well as retrospective injunctive relief ordering the Commission to provide Machete with an Incentive Program grant.  It also sought a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code that the Incentive Program violated the First Amendment, Fourteenth Amendment, and Article I, Section 8 of the Texas Constitution both facially and as applied to Machete.  Additionally, Machete sought economic damages resulting from the unlawful denial of an Incentive Program grant.

Heather Page subsequently replaced Morales as director of the Commission and was substituted as the named defendant in her official capacity, while Morales remained a party in his individual capacity.  Both Page and Morales moved to dismiss Machete's claims for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a cognizable claim under Rule 12(b)(6).[2]  In its response in opposition of the motion to dismiss, Machete requested leave to amend and conduct limited discovery if the district court were to find its complaint deficient in any respect.

A magistrate judge reviewed the motion to dismiss and issued a report and recommendation, which was adopted by the district court and resulted in the dismissal of all of Machete's claims.  Machete timely appealed.

---

[2] As Morales had previously filed an answer to the matter on behalf of the Commission, the magistrate judge assessed the Rule 12(b)(6) motion under Rule 12(c), as a motion for judgment on the pleadings.

4

No. 15-50120

## II. Standard of Review

We review de novo a district court's dispositions under Rule 12(b)(1) and 12(c).  *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 684 (5th Cir. 2010).  "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted).  In reviewing these motions, we accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the nonmovant.  *Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012).

Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  While this plausibility standard is not a "probability requirement," it requires a showing of more than "a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For the purposes of a motion to dismiss, we must take all of the factual allegations in the complaint as true, but we are not "bound to accept as true a legal conclusion couched as a factual allegation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  However, in examining a Rule 12(b)(1) motion, a district court is empowered to find facts as necessary to determine whether it has jurisdiction.  *See Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1981).

No. 15-50120

We review a district court's denial of leave to amend for an abuse of discretion. *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1876 (2014). We review a district court's decision on whether to permit limited discovery on qualified immunity issues for an abuse of discretion. *See Backe v. LeBlanc*, 691 F.3d 645, 649 (5th Cir. 2012). We review de novo whether a state is entitled to sovereign immunity. *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011).

### III. Discussion

*A. Machete's federal claims against Page in her official capacity*

Acting in her official capacity for the state of Texas as the director of the Commission, Page concedes that the removal of the case from state to federal court was a voluntary waiver of sovereign immunity. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 250 (5th Cir. 2005). However, even if a state waives its sovereign immunity, claims seeking monetary relief under "§ 1983 . . . do not lie against a [s]tate." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 (1997) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). As a result, Machete's claims against Page in her official capacity seeking economic damages and retrospective injunctive relief for an Incentive Program grant are barred.

Machete's claims against Page in her official capacity are thus limited to prospective injunctive and declaratory relief. *See Will*, 491 U.S. at 71 n.10 ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the [s]tate." (citation omitted)). Machete contends that the district court erred in holding that Machete lacked standing to prevent Page and the Commission from continuing to enforce the Incentive Program's statute and regulations. In the context of prospective injunctive and declaratory relief, past exposure to illegal conduct, by itself,

does not evince a present case or controversy and thus cannot establish standing. *See O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). "[T]o obtain injunctive relief, the plaintiff must establish a real and immediate threat that [it] w[ill] again suffer similar injury in the future." *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011) (citation omitted). "[E]specially where governmental action is involved, courts should not intervene unless the need for equitable relief is clear, not remote or speculative." *Henschen v. City of Houston*, 959 F.2d 584, 588 (5th Cir. 1992) (quoting *Eccles v. Peoples Bank*, 333 U.S. 426, 431 (1948)).

Machete argues that due to the success of the first *Machete* film and because the director of *Machete Kills* has a reputation for bringing film projects to Texas, the district court erred in dismissing as too speculative Machete's claim that it would be subject to an allegedly unlawful denial of an Incentive Program grant in the future. Machete's argument is unpersuasive; it has not met its burden to establish a need for prospective injunctive or declaratory relief. Machete failed to show any imminent plans to produce another film in the *Machete* franchise. It also failed to show that such a project had any outstanding grant applications with the Commission or that such a project would be denied for allegedly unlawful reasons. By failing to show any concrete and imminent plans for such a film, it failed to establish a "real and immediate threat" that it would be denied an Incentive Program grant in an allegedly unlawful way. *See Stewart*, 647 F.3d at 557 (citation omitted). Machete's lack of standing to pursue prospective injunctive relief further prevents us from granting declaratory relief against Page. "Because there is no ongoing injury . . . and any threat of future injury is neither imminent or likely, there is not a live case or controversy for this court to resolve and a declaratory judgment would therefore be inappropriate." *Bauer v. Texas*, 341

No. 15-50120

F.3d 352, 358 (5th Cir. 2003).  Accordingly, Machete lacked standing to pursue his only available federal claims against Page in her official capacity.[3]

*B. Machete's claims against Morales in his individual capacity*

Machete maintains that the district court erred in determining that qualified immunity barred Machete's claims against Morales in his individual capacity.[4]  To overcome an official's qualified immunity, a plaintiff must plead facts demonstrating "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

*1. Machete's First Amendment claim*

Machete argues that Morales applied the Incentive Program to it in a way that discriminated against it on the basis of viewpoint, thus violating its First Amendment rights.  Machete's factual allegations are insufficient to support a claim that Morales violated a clearly established right in this regard.

---

[3] Machete further contends that the district court abused its discretion by failing to grant Machete leave to amend its complaint.  We have affirmed a district court's denial of leave to amend due to a plaintiff's failure to "show[] on appeal . . . any additional facts that would have precluded the district court from reaching its conclusion." *Rogers v. Boatright*, 709 F.3d 403, 411 (5th Cir. 2013).  The additional facts that Machete attempts to assert on appeal are limited to abstract plans for future filmmaking in Texas and thus fail to remedy the speculative nature of its claim for prospective injunctive relief.  Coupled with the fact that the district court permitted Machete to amend its complaint once before, this leads us to conclude that the district court did not abuse its discretion in denying Machete leave to amend its complaint.

[4] Any prospective relief against Morales would fail for the same reasons discussed regarding Page and for the additional reason that Morales is no longer in a position to affect the outcome of future Incentive Program applications.  Machete's claims for past relief against Morales are subject to a qualified immunity analysis because he seeks economic damages.  All other past relief, including a declaration that a grant should have been awarded, is meaningless as to Morales in his individual capacity, as he is not individually in a position to award a grant. *See Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir. 2001) (en banc) (noting that for a plaintiff to satisfy standing, the defendant must have the power to redress the asserted injuries).

No. 15-50120

"The [g]overnment can, without violating the Constitution, selectively fund a program to encourage certain activities it believes to be in the public interest, without at the same time funding an alternative program which seeks to deal with the problem in another way. In so doing, the [g]overnment has not discriminated on the basis of viewpoint; it has merely chosen to fund one activity to the exclusion of the other." *Rust v. Sullivan*, 500 U.S. 173, 193, 196 (1991) (upholding regulations that limited the abortion-related speech of clinics receiving federal funds because they did "not force the . . . grantee to give up abortion-related speech; they merely required that the grantee keep such activities separate and distinct" from activities that received government funding). To hold otherwise "would render numerous [g]overnment programs constitutionally suspect." *Id.* at 194.

A government funding provision will not compromise First Amendment values as long as it "[does] not silence speakers by expressly threaten[ing] censorship of ideas," or "introduce considerations that, in practice, would effectively preclude or punish the expression of particular views." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 572, 583 (1998) (upholding a federal grant program requiring the responsible agency to fund artistic pieces only after "taking into consideration general standards of decency and respect for the diverse beliefs and values of the American public"). "[A]lthough the First Amendment certainly has application in the subsidy context . . . the [g]overnment may allocate competitive funding according to criteria that would be impermissible were direct regulation of speech or a criminal penalty stake." *Id.* at 587–88. Government funding provisions can become unconstitutional conditions if they "effectively prohibit[] the recipient from engaging in the protected conduct outside the scope of the [government] funded program," *Rust*, 500 U.S. at 197, or if the subsidy is "manipulated to have a coercive effect," *Finley*, 524 U.S. at 587 (citation omitted).

9

Machete has not shown that Morales's denial of an Incentive Program grant "effectively preclude[d] or punish[ed]" Machete from or for holding particular viewpoints in *Machete Kills*. *Id.* at 583. Nor does it appear that the grant denial effectively prohibited Machete from engaging in protected First Amendment activity "outside the scope" of the Incentive Program. *Rust,* 500 U.S. at 197. Despite the denial of an Incentive Program grant, *Machete Kills* was still filmed in Texas, produced, and released. Machete does not dispute that it was free to engage in protected First Amendment activity without the benefit of an Incentive Program grant, and in fact did engage in such activity by making the film.[5] Machete has not shown that it is clearly established that the First Amendment requires a state which has an incentive program like this one to fund films casting the state in a negative light. As such, it cannot show that Morales violated Machete's clearly established rights in this context. *See Ashcroft*, 131 S. Ct. at 2080.

### 2. Machete's Due Process Clause claims

Similarly unavailing is Machete's argument that it can recover against Morales individually because it had a property interest in an Incentive Program grant that triggered the protections of the Fourteenth Amendment's Due Process Clause. "In a section 1983 cause of action asserting a due process violation, a plaintiff must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995). "Property interests are not created by the Constitution," but from "independent sources such as state statutes, local

---

[5] The facial challenge does not fare any better for the reason that "[a] facial challenge to a legislative act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [a]ct would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Machete has not met this legal burden.

ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Id*. at 936–37. However, "[d]iscretionary statutes do not give rise to constitutionally protectable interests." *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001). "A constitutional entitlement cannot be created—as if by estoppel—merely because a wholly and expressly discretionary state privilege has been granted generously in the past." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981) (emphasis omitted).

Here, the Incentive Program's statutes and regulations make clear that grants were discretionary. The statute goes beyond merely giving the Commission discretion to reject grant applications: it also specifies that the Commission "is not required to act on any grant application." TEX. GOV'T CODE ANN § 485.022(e) (West 2012). The discretionary nature of the Incentive Program is emphasized in its promulgated rules that stipulate that "[n]ot every project will qualify for a grant." 13 TEX. ADMIN. CODE § 121.4(b). What is more, the Commission also has the discretion to revoke an applicant's eligibility for funds or require that an applicant refund the distribution of grants if the Commission later determines that an applicant failed to meet the Incentive Program's requirements. *See id.* § 121.14. Even viewing the facts in the light most favorable to Machete and assuming that few, if any, Incentive Program grants were previously denied, a property interest is not created merely because funds were "granted generously in the past." *Dumschat*, 452 U.S. at 465. Accordingly, Machete cannot establish that it had a clearly established right to these funds that Morales violated. *See Ashcroft*, 131 S. Ct. at 2080.

Machete also unsuccessfully asserts that its due process rights were violated due to the vagueness of the Incentive Program's statute and regulations. The Due Process Clause does protect speakers "from arbitrary and discriminatory enforcement of vague standards," but "when the

[g]overnment is acting as a patron rather than as sovereign, the consequences of imprecision are not constitutionally severe." *Finley*, 524 U.S. at 588–89. Here, the Incentive Program's funding criteria are not any more imprecise than the criteria found to pass constitutional muster in *Finley*.[6]

Even after viewing the facts in the light most favorable to Machete, we conclude that Morales did not violate Machete's clearly established rights under the First Amendment or Fourteenth Amendment.[7]

*C. Machete's claims under the Texas Constitution*

Machete also argues that Morales applied the Incentive Program in a way that violated the Texas Constitution's free-speech provision and as a result, is due relief from Morales individually and Page in her official capacity. Machete unsuccessfully claims that the denial of an Incentive Program grant was akin to a prior restraint. The Texas Supreme Court has recognized that the Texas Constitution's free speech provision "provides greater rights of free expression than its federal equivalent" in the context of prior restraints. *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992). However, "[t]he term prior restraint is used to describe administrative and judicial orders *forbidding* certain communications when issued in  advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550

---

[6] Both provisions require that the relevant agency consider the "general standards of decency and respect for the diverse beliefs and values" of citizens. TEX GOV'T CODE ANN. § 485.022(e) (West 2012); *Finley*, 524 U.S. at 572 (quoting 20 U.S.C. § 954(d)(1)). The Incentive Program's statute, however, adds that the Commission may also deny an application due to "inappropriate content or content that portrays Texas or Texans in a negative fashion." TEX GOV'T CODE ANN. § 485.022(e) (West 2012).

[7] Machete also contends that the district court abused its discretion in denying Machete leave to conduct limited discovery on the issue of qualified immunity. A district court may defer a ruling on qualified immunity and issue a discovery order only after it initially determines that the plaintiff alleges facts that, if true, would overcome the defense of qualified immunity. *See Backe*, 691 F.3d at 648. As the district court properly concluded that Machete's pleadings could not overcome Morales's qualified immunity, it did not abuse its discretion in denying Machete leave to conduct limited discovery.

(1993) (citation omitted). Here, Morales did not forbid Machete from filming, producing, or releasing *Machete Kills*, but merely opted not to subsidize the film with Texas taxpayer funds. Accordingly, the district court did not err in dismissing this claim on the pleadings.[8]

## IV. Conclusion

For the reasons set forth above, we AFFIRM the district court's dismissal of Machete's claims against Page in her official capacity. We further AFFIRM the district court's dismissal of Machete's claims against Morales in his individual capacity.

---

[8] We note the inapplicability of the principle outlined in *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984), which barred federal courts from exercising pendent jurisdiction over claims alleging that state officials violated state law in carrying out their official responsibilities. *See Meyers*, 410 F.3d at 252 (noting that *Pennhurst* is inapplicable when a state voluntarily waives its sovereign immunity by removing from state to federal court).