# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10860

United States Court of Appeals
Fifth Circuit

**FILED**
June 7, 2016

Lyle W. Cayce
Clerk

THOMAS TRAVIS,

Plaintiff - Appellant

v.

CITY OF GRAND PRAIRIE, TEXAS; RICK OSEGUERA, Individually; CHIEF STEVEN DYE, Individually; ASSISTANT CHIEF MICHAEL TAYLOR, Individually,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:14-CV-3650

Before REAVLEY, HAYNES, and HIGGINSON, Circuit Judges.

PER CURIAM:\*

Plaintiff-Appellant Thomas Travis sued the City of Grand Prairie, Texas ("the City") and several police officers in their individual capacities alleging causes of action under 42 U.S.C. § 1983, Title VII, and Texas state law. Travis appeals the district court's dismissal of his claims under Federal Rule of Civil Procedure 12(b)(6). We AFFIRM.

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10860

## I. Background

These facts are drawn from the allegations in Travis's third amended complaint, which we must accept as true. *See Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 417 (5th Cir. 2010). In July of 2013, Travis reported to the state welfare agency that Rita Sandoval and Jessica Castaldo were committing welfare fraud and perjury. Travis also reported to Child Protective Services ("CPS") that Sandoval had sexually assaulted a minor child.

Two days after Travis made these reports, Castaldo and Sandoval reported to the Navarro County Sheriff's Department that Travis had sexually assaulted Castaldo. The Sheriff's Department questioned Travis regarding the report, and Travis informed the officers that the allegations by Castaldo and Sandoval were false and made in retaliation for his having reported the welfare fraud and sexual assault of a minor. The Sheriff's Department concluded that the sexual assault allegations against Travis were indeed false and retaliatory.

The next day, July 25, 2013, Castaldo and Sandoval reported the same sexual assault allegations against Travis to the Grand Prairie Police Department. The report was ultimately assigned to Detective Rick Oseguera. Travis informed Detective Oseguera that Castaldo and Sandoval's allegations were false and retaliatory, that he had proof that Castaldo and Sandoval had committed state and federal fraud and perjury, and that Castaldo had sexually assaulted a minor. Travis alleges that CPS confirmed with the Grand Prairie Police Department that there was an ongoing criminal investigation into Castaldo's alleged sexual assault of a minor. Further, Travis alleges that the Navarro County Sheriff's Department communicated to Detective Oseguera that Castaldo and Sandoval's allegations against Travis were in fact false and retaliatory in motive.

No. 15-10860

Detective Oseguera ignored Travis's assertions of innocence, and Travis was arrested by the Grand Prairie Police Department for sexually assaulting Castaldo. In support of Travis's arrest, Detective Oseguera provided a sworn affidavit stating that Travis had a history of filing false reports.

Travis complained to Assistant Chief Michael Taylor and Chief Steven Dye that Detective Oseguera was knowingly and intentionally violating Travis's civil rights by continuing to prosecute Travis despite the obvious retaliatory motive for the reports of sexual assault by Castaldo and Sandoval. Chief Dye and Assistant Chief Taylor allegedly agreed that the report about Travis appeared false, but they proceeded to seek a grand jury indictment.

Despite allegedly knowing that the charges against Travis were false, the Grand Prairie Police Department proceeded to prosecute Travis. Travis was jailed for approximately three months until, on July 30, 2014, a Dallas County grand jury no-billed Travis on one charge, and the District Attorney's office dropped the remaining charge against Travis.

Travis filed suit against the City and against Detective Oseguera, Chief Dye, and Assistant Chief Taylor ("the officers") on October 10, 2014. Travis alleges that on October 24, 2014, he was arrested and assaulted by Officer Andrew Chance of the City of Mesquite Police Department at the request of the officers in retaliation for his filing his federal lawsuit. Travis's third amended complaint included causes of action for violations of 42 U.S.C. § 1983 and retaliation claims under Title VII of the Civil Rights Act of 1964,[1] as well

---

[1] In its order on defendants' motions to dismiss, the district court discussed Travis's *Brady* violation claim. *See Brady v. Maryland*, 373 U.S. 83 (1963). To the extent that Travis's third amended complaint can be construed as alleging a *Brady* violation, he has failed to adequately brief the issue before this court. As a result, he has abandoned the issue. *See Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir. 1993) (" Questions posed for appellate review but inadequately briefed are considered abandoned." (citation omitted)); FED. R. APP. P. 28(a)(8)(A) (requiring argument to contain "appellant's contentions and the

3

No. 15-10860

as state law claims of intentional infliction of emotional distress, false imprisonment, malicious prosecution, and defamation. The district court granted defendants' motions to dismiss Travis's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Travis timely appealed.

## II. Standard of Review

"[We] review[] de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff.'" *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (citation omitted). "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted).

"We review de novo whether a state is entitled to sovereign immunity," *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (citing *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011)), and review a district court's denial of leave to amend for an abuse of discretion, *Simmons v. Sabine River Auth. La.*, 732 F.3d 469, 478 (5th Cir. 2013).

---

reasons for them, with citations to the authorities and parts of the record on which the appellant relies").

No. 15-10860

## III. Discussion

### A. Section 1983 Claims Against the Officers

#### 1. Malicious Prosecution Under 42 U.S.C. § 1983

Travis alleges that the officers maliciously charged him with sexual assault and, during the arrest, tendered false information to the prosecutor to lead him to believe that probable cause existed for the arrest in violation of his Fourth, Eighth, and Fourteenth Amendment Rights.  To the extent Travis alleges that the officers violated his constitutional rights by engaging in malicious prosecution, we have held that a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution is not viable.[2] *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) (en banc); *see also Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 812–13 (5th Cir. 2010).  Accordingly, Travis's freestanding § 1983 malicious prosecution claim fails as a matter of law. *Cuadra*, 626 F.3d at 812.  To the extent Travis "allege[s] that officials violated specific constitutional rights in connection with a 'malicious prosecution,'" we address those claims below.  *Id.* (quoting *Castellano*, 352 F.3d at 945).

#### 2. Unlawful Seizure and False Arrest Under 42 U.S.C. § 1983

Travis alleges that the officers unlawfully seized him and committed a false arrest in violation of his Fourth Amendment rights.  Travis cannot prevail on his claim for unlawful seizure or false arrest unless he alleges facts that, if true, show that the officers lacked probable cause to seize and/or arrest him.

---

[2] We have recognized that the Fourth Amendment's protections extend to preclude unreasonable seizure throughout the pretrial events of a prosecution, although we have discussed it as a Fourth Amendment claim and have rejected the notion that a freestanding malicious prosecution claim absent a Fourth Amendment violation is cognizable under § 1983. *See Castellano v. Fragozo*, 352 F.3d 939, 945-54 (5th Cir. 2003) (en banc).  We note that the Supreme Court has granted a petition for a writ of certiorari to review the Seventh Circuit's holding in *Manuel v. City of Joliet*, 590 F. App'x 641 (7th Cir. 2015), *cert. granted*, 136 S. Ct. 890 (2016), that the Fourth Amendment does not give rise to a claim for malicious prosecution.

*See Connors v. Graves*, 538 F.3d 373, 377 (5th Cir. 2008) (discussing showing of no probable cause with respect to claim for unlawful seizure); *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (same with respect to false arrest claim). Travis alleges that the officers lacked probable cause to arrest him because Detective Oseguera possessed direct exculpatory evidence proving Travis's innocence—namely, CPS's confirmation that Castaldo was under investigation for child sexual abuse and the Navarro County Sheriff's Department's conclusion that Castaldo's allegations were false.

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000)); *see also Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th Cir. 2000) ("The appropriate balance between an individual's interest in remaining free from seizure of his person and the government's interest in enforcing its laws has been reached by requiring a warrant or the existence of probable cause that the individual has committed some criminal act."). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Curtis v. Anthony*, 710 F.3d 587, 595 (5th Cir. 2013) (quoting *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983)).

Here, even assuming Travis's allegations are true, Travis has failed to show that the officers lacked probable cause to arrest or seize him. Travis was arrested pursuant to Castaldo's report that Travis had sexually assaulted her. This report alone was sufficient to give the officers probable cause for arrest. *See Johnson v. Bryant*, 46 F.3d 66, 1995 WL 29317, at *3 (5th Cir. 1995)

(unpublished)[3] (noting that where a victim specifically names her perpetrator, probable cause generally exists to arrest the named individual); *Fontenot v. Cormier*, 56 F.3d 669, 674 (5th Cir. 1995) (probable cause to arrest perpetrator existed where victim of assault identified perpetrator by name); *United States v. Simpson*, 484 F.2d 467, 468 (5th Cir. 1973) (assault victim's identification of perpetrator gave rise to probable cause for arrest). While he has questioned Castaldo's credibility and motives, he has pointed to nothing that would show her account to be demonstrably false. Travis also provides no authority for the argument that a different police department was required to accept the Navarro County Sheriff's Department's alleged resolution of this credibility determination. Because Travis has failed to allege that the officers lacked probable cause, we affirm the district court's dismissal of Travis's § 1983 claims against the officers.[4]

*B. Municipal Liability Under 42 U.S.C. § 1983*

Travis alleges that the City is liable under § 1983 because "it sanctioned the custom, practice and/or policy or procedure of illegal seizures" and "because the arrest of Plaintiffs without justification constituted a persistent, widespread practice of city employees, in particular members of the City of Grand Prairie Police Department." In order to bring a § 1983 claim for municipal liability, a plaintiff must allege a constitutional violation resulting from a municipal custom or policy. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–94 (1978). A plaintiff must identify: "(1) an official policy (or custom), of which (2) a policy maker can be charged with

---

[3] Although *Johnson* is an unpublished decision, it is precedential under 5TH CIR. R. 47.5.3.

[4] Because we conclude that Travis has not adequately alleged a violation of his constitutional rights and therefore affirm the dismissal of his § 1983 claims against the officers, we need not address the officers' assertions of qualified immunity. *See Ontiveros v. City of Rosenberg*, 564 F.3d 379, 385 (5th Cir. 2009).

actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). As discussed above, Travis has failed to allege a constitutional violation because he has not sufficiently alleged that the officers lacked probable cause to arrest or seize him. Accordingly, he has not identified a constitutional violation that could support a finding of municipal liability. *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Without an underlying constitutional violation, an essential element of municipal liability is missing."). We therefore affirm the district court's dismissal of Travis's § 1983 claims against the City.

## C. Retaliation Under Title VII

Travis also alleges that defendants violated Title VII of the Civil Rights Act by requesting that Officer Chance of the Mesquite Police Department assault and arrest Travis in retaliation for Travis's filing his federal lawsuit. "Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin." *Grimes v. Tex. Dep't of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996) (citing 42 U.S.C. § 2000e–2(a)). To state a claim for retaliation under Title VII, a plaintiff must allege that he engaged in protected activity and that an adverse employment action occurred as a result. *See Brandon v. Sage Corp.*, 808 F.3d 266, 270 (5th Cir. 2015) (quoting *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002)). Travis's allegations of retaliation do not arise out of an employment relationship and thus are not cognizable under Title VII. Accordingly, we affirm the district court's dismissal of his Title VII claims.

## D. Texas State Law Claims

Travis also brings the following state law claims against defendants: defamation, malicious prosecution, false imprisonment, and intentional

No. 15-10860

infliction of emotional distress. On the City's motion, the district court dismissed Travis's state law claims against the officers under Texas Civil Practice & Remedies Code § 101.106(e) on the ground that Travis elected to bring his suit against the City rather than the officers. The district court then dismissed Travis's state law claims against the City on sovereign immunity grounds. Travis argues that the district court erred in dismissing his state law claims against Detective Oseguera, contending that he named only Detective Oseguera and not the City in his Texas state law claims.

The Texas Tort Claims Act ("TTCA") requires an election of remedies when a plaintiff sues both a governmental entity and its employees. Section 101.106 of the Texas Civil Practice and Remedies Code states that, "[t]he filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Further, "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit." TEX. CIV. PRAC. & REM. CODE § 101.106(e). A suit against an individual "regard[s] the same subject matter" as a suit against a governmental entity when it "arise[s] out of the same actions and occurrences." *Dall. Cty. Mental Health & Retardation v. Bossley*, 968 S.W.2d 339, 344 (Tex. 1998). Here, even if Travis intended to only name Detective Oseguera with respect to his state law claims, it is apparent that those claims arise out of the same actions and occurrences as Travis's claims against the City—they deal with Travis's arrest and his subsequent prosecution for sexual assault. Accordingly, the district court properly granted the City's motion under Section 101.106(e) and dismissed the state law claims against the officers.

9

No. 15-10860

Additionally, the district court properly dismissed Travis's state law claims against the City. The TTCA precludes the state of Texas and its municipalities from being held liable for intentional torts. *See* TEX. CIV. PRAC. & REM. CODE § 101.057 ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort."). Travis's state law claims alleging false imprisonment, defamation, malicious prosecution, and intentional infliction of emotional distress are all based on intentional torts. Thus, Travis's state law claims against the City are barred by sovereign immunity.

*E. Leave to Amend*

Finally, Travis contends the district court erred in refusing to grant him leave to amend his complaint by filing a fourth amended complaint. Travis sought to amend his third amended complaint to add § 1983 claims for excessive force, fraudulent concealment, and retaliation and intimidation. The district court denied leave, concluding that Travis's proposed amendment constituted a bad faith attempt to artfully draft around defendants' motions to dismiss. Additionally, the district court determined that Travis had already been given ample opportunity to amend his complaint and had unduly delayed filing his proposed amendment until after defendants filed their motions to dismiss.

District courts have wide latitude to consider requests for leave to amend. In deciding whether to permit an amendment, a district court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). We conclude that the district court gave Travis ample prior opportunities to plead his best case, and the district court did not abuse its

discretion in denying Travis leave to amend his complaint a fifth time. *See, e.g., U.S. ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 403–04 (5th Cir. 2004) (holding that district court did not abuse its discretion in denying leave to file a third amended complaint where plaintiff had already been given opportunities to amend and did not indicate what additional facts he could plead to correct the deficiencies in his complaint).

AFFIRMED.