# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 20, 2023

Lyle W. Cayce
Clerk

No. 22-10414

Trinity Home Dialysis, Incorporated,

*Plaintiff—Appellant*,

*versus*

WellMed Networks, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2112

Before Elrod, Haynes, and Willett, *Circuit Judges*.

Per Curiam:[*]

Trinity Home Dialysis sued WellMed Networks in state court, alleging that WellMed failed to reimburse Trinity for services it provided to Medicare enrollees. WellMed removed the action to federal court, invoking federal officer jurisdiction, then moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), urging that Trinity failed to exhaust its administrative remedies prior to filing suit. Trinity moved to remand. The district court

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-10414

denied the remand motion and granted the motion to dismiss. For the reasons discussed below, we AFFIRM.

## I.    Factual Background

This case involves the Medicare Act and its supporting regulations, so, we begin with an overview of several relevant provisions. The Centers for Medicare and Medicaid Services ("CMS") is a branch of the Department of Health and Human Services responsible for administering Medicare benefits. *See* 42 U.S.C. § 1395w-21–29. Under Medicare Part C, CMS may delegate its statutory obligation to provide Medicare benefits to private sector insurers, called Medicare Advantage Organizations ("MA Organizations"). *Id.* CMS pays the MA Organizations for each enrollee they cover, and the Organizations then assume all financial risk for servicing those enrollees. *See id.* § 1395w-24–25. MA Organizations may either directly provide benefits to enrollees, or they may subcontract that duty to third-party providers. *See id.* § 1395w-22(d)(1); 42 C.F.R. § 422.214.

MA Organizations must make "determinations" regarding which treatments the Medicare Act covers, which treatments are not covered, and at what rate certain claims may be reimbursed. 42 U.S.C. § 1395w-22(g)(1)(A). These decisions are known as "organization determinations." *Id.* If an entity wishes to challenge any aspect of an organization determination, it must first exhaust its administrative remedies by following the process prescribed by the Medicare Act and its implementing regulations. *See id.* § 1395w-22(g); 42 C.F.R. §§ 422.560–422.622. An entity may not maintain a suit in federal court to challenge an organization determination until it has followed that process. *See* 42 U.S.C. § 405(g); *Heckler v. Ringer*, 466 U.S. 602, 617 (2013).

With this overview in mind, we turn to the entities and claims in this case. CMS contracted with UnitedHealthcare Benefits of Texas

2

No. 22-10414

("UnitedHealthcare").    UnitedHealthcare, operating as an MA Organization, agreed to provide benefits to Medicare enrollees. UnitedHealthcare subcontracted a portion of those duties to one if its indirect subsidiaries, WellMed.

Trinity is a provider of in-home kidney dialysis services. From 2014 to 2019, Trinity provided its services to WellMed's enrollees. For the first two years, WellMed reimbursed Trinity in full. However, from 2016 to 2019, WellMed declined to reimburse Trinity, reasoning that the services did not qualify for full reimbursement under the Medicare Act. Instead, WellMed offered a settlement value based on the rate set by the standard Medicare fee schedule. Trinity rejected WellMed's offer and subsequently filed suit in Texas state court, seeking a declaratory judgment and damages for unjust enrichment.

WellMed removed the case to federal court, invoking federal officer jurisdiction under 28 U.S.C. § 1442(a), then moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Trinity moved to remand. Before ruling on the motions, the district court ordered the parties to engage in limited jurisdictional discovery and held a hearing to determine whether it had jurisdiction. The district court then denied the remand motion, concluding that removal was proper. However, it granted the Rule 12(b)(1) motion because Trinity failed to exhaust its administrative remedies prior to filing suit. It accordingly dismissed Trinity's claims without prejudice, and Trinity timely appealed.

## II.    Standard of Review

On appeal, Trinity argues that the district court erred by (1) denying its remand motion; (2) dismissing its claims under Rule 12(b)(1); and (3) ordering jurisdictional discovery. We review the denial of the remand motion and the Rule 12(b)(1) dismissal de novo. *See Allen v. Walmart Stores,*

No. 22-10414

*L.L.C.*, 907 F.3d 170, 182 (5th Cir. 2018) (denial of remand motion); *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021) (dismissal for failure to exhaust).  In reviewing a motion to dismiss, "we must take all of the factual allegations in the complaint as true, but we are not bound to accept as true a legal conclusion couched as a factual allegation."  *Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015) (quotation omitted).  Importantly, though, "in examining a Rule 12(b)(1) motion, a district court is empowered to find facts as necessary to determine whether it has jurisdiction."  *Id.*  Accordingly, in our review, we defer to those factual findings.  *See id.*  We review the district court's grant of jurisdictional discovery only for an abuse of discretion.  *See Davila v. United States*, 713 F.3d 248, 263–64 (5th Cir. 2013).  We address each of Trinity's challenges, in turn, below.

### III.    Motion to Remand

We begin with the district court's denial of Trinity's remand motion. The federal officer removal statute permits the United States, its agencies, its officers, and "any person acting under that officer" to remove a civil action to federal court.  28 U.S.C. § 1442(a)(1); *see also Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007).  Unlike other removal statutes, federal officer jurisdiction is not "narrow or limited."  *Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017) (internal quotation marks and citation omitted). Accordingly, we review "without a thumb on the remand side of the scale," *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en banc) (quotation marks omitted), and we "broadly construe[]" the statute "in favor of a federal forum," *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021) (quotation omitted).

To remove under § 1442(a), a removing party must only show that: (1) it is a "person" within the meaning of the statute; (2) it has asserted a "colorable federal defense"; (3) it acted "pursuant to a federal officer's

directions"; and (4) there is a connection or association between its acts under color of federal office and the plaintiff's claims. *Latiolais*, 951 F.3d at 291 (quotation omitted).

Turning to this case, we analyze whether WellMed satisfies these requirements here. At the start, we conclude that WellMed easily meets the first two prongs. There is no debate that WellMed is a "person" within the meaning of the federal officer statute. *See id.* (recognizing that even corporate entities can remove under § 1442(a) so long as they are acting under guidance of a federal officer or agency). Additionally, (as we discuss below) WellMed avers that Trinity failed to exhaust its administrative remedies prior to filing suit. This is plainly a colorable, and ultimately successful, federal defense.

The crux of the dispute then is whether WellMed can establish the third prong—the "acting under" requirement. WellMed urges that it does because it acted pursuant to CMS's directions. We construe the "acting under" requirement broadly. *See Watson*, 551 U.S. at 147 (recognizing liberal nature of "acting under" requirement). Accordingly, WellMed does not need to prove that its "conduct was precisely dictated by a federal officer's directive." *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021). Rather, our analysis focuses on the "*relationship* between the removing party and the relevant federal officer." *Id.* at 455 (emphasis in original).

In evaluating that relationship, we are guided by several general principles. First, our court has rejected the theory that a removing party "acts under" a federal officer merely because it operates in a field that is "subject to pervasive federal regulation." *See, e.g.*, *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 235 (5th Cir. 2022), *cert. denied*, No. 22-455, 2023 WL 2123755 (Feb. 21, 2023) (quotation omitted). Second, a removing party's mere status

as a subcontractor on its own is similarly insufficient to establish the requisite relationship. *See, e.g.*, *Plaquemines Parish v. Chevron USA, Inc.*, No. 22-30055, 2022 WL 9914869, at *3 (5th Cir. Oct. 17, 2022), *cert. denied*, No. 22-715, 2023 WL 2227757 (Feb. 27, 2023). Rather, there must be something "more" to satisfy that relationship. *See id.*

For instance, the Supreme Court has instructed that an "unusually close" relationship can satisfy the "acting under" requirement if (1) the removing party engages in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior," and (2) the federal officer exercises "subjection, guidance, or control" over the removing party. *Watson*, 551 U.S. at 151–52 (emphasis in original).

With these principles in mind, we consider whether the relationship between CMS and WellMed was "unusually close" and therefore sufficient to support federal officer jurisdiction here. We conclude that it was. On the facts before us, WellMed has demonstrated that it assisted CMS in administering Medicare benefits on behalf of the federal government. As discussed above, CMS is required to either provide Medicare benefits directly to enrollees or to contract with third parties to provide those services instead. *See* 42 U.S.C. § 1395w-21–29. CMS chose the latter option, contracting with UnitedHealthcare, and, in turn, UnitedHealthcare then subcontracted with WellMed. So, WellMed was performing obligations that CMS would have otherwise been required to provide "in the absence of [the] contract." *See Watson*, 551 U.S. at 154.

The fact that WellMed was a mere subcontractor and not in direct privity of contract with CMS does not undermine that conclusion, in this particular case. Rather, WellMed goes a step further in demonstrating that "unusually close relationship" by also showing that it was subject to extensive "detailed regulation, monitoring, [and] supervision" by the federal

government *while it was assisting* the government in carrying out its delegated duties. *See id.* at 153; *see also Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 252–53 (4th Cir. 2021). WellMed does not simply rely on an assertion that it was entitled to removal because it voluntarily complied with federal regulations.[1] *Cf. Tyson Foods, Inc.*, 40 F.4th at 236 (rejecting the argument that acting under requirement was satisfied merely because the entity "was subject to heavy regulation"). Instead, it cites to specific means by which CMS exercised guidance and control over WellMed as it executed its delegated duties: (1) the contract with UnitedHealthcare and (2) the Medicare statutory scheme.

First, the contract between CMS and UnitedHealthcare not only expressly contemplated the use of subcontractors; it also *required* that CMS retain supervision and control over subcontractors like WellMed. For instance, under the contract, CMS retained the rights to audit, inspect, and evaluate subcontractors' accounting records. Additionally, the contract included specific requirements for how UnitedHealthcare's subcontractor

---

[1] The relationship here is unlike the relationship between the removing party and the federal government in *Tyson Foods*. 40 F.4th at 230, 235. In that case, Tyson argued that it "acted under" the directions of the federal government because the government directed it to "continue operations" in order to "ensur[e] continuity of functions critical to public health and safety" during the COVID-19 pandemic. *Id.* at 234–35. In particular, Tyson cited to the fact that it worked alongside the federal government "to ensure that on-site inspections could continue while mitigating the danger to Tyson employees and [federal] inspectors." *Id.* Therefore, it averred that it sufficiently "acted under" the government. *See id.*

We rejected Tyson's argument, concluding that those facts only "show[ed] that Tyson was subject to heavy regulation—not that it was an agent of the federal government." *Id.* at 235. At bottom, there was nothing demonstrating "any evidence of delegated authority or a principal/agent relationship at all." *Id.* at 236. But, here, as discussed in this section, WellMed sufficiently establishes the evidence of delegated authority that was absent in *Tyson*. *See id.* at 235–36. Given that delegation, our reasoning in *Tyson* does not extend here.

agreements were written and executed.  Most importantly, however, the contract explicitly provided that subcontractors were *required to comply* with all applicable Medicare laws, regulations, and CMS instructions.  Second, Part C of the Medicare Act—authorizing CMS to contract out its duties— subjects MA Organizations to extensive federal statutes and regulations.  *See generally, e.g.*, 42 U.S.C. § 1395w-21–28.  Since those provisions also specifically contemplate the use of subcontractors, *see* 42 C.F.R. § 422.504, they too extend to WellMed.  Therefore, WellMed was subject to CMS's supervision and control via the contract and this detailed statutory and regulatory scheme.

Taken together, these facts illustrate a sufficiently close relationship between CMS and WellMed to satisfy the "acting under" prong.  Even as a subcontractor, WellMed was both carrying out the delegated duties of CMS and, "at all times, subject to the federal government's guidance and control." *Express Scripts*, 996 F.3d at 253; *see also St. Charles Surgical Hosp.*, 990 F.3d at 455.  The third requirement is, thus, satisfied.[2]

Finally, under the fourth prong, WellMed must establish a connection or association between its acts under color of federal office and Trinity's claims.  *Latiolais*, 951 F.3d at 291.  It has also made this showing.  Trinity seeks to hold WellMed liable for its failure to reimburse Trinity for services it provided.  But WellMed made this decision based on its determination that Trinity's claims were not eligible for full reimbursement under the Medicare Act.  WellMed's discretion to determine whether a claim is covered or

---

[2] We note, however, that our holding is limited to the specific facts of this case. We do not reach any conclusion as to whether subcontractors in other contexts may satisfy the "acting under" requirement.  Nor do we express any opinion regarding the requisite amount of guidance and control needed generally to confer federal officer jurisdiction.  We hold only that the specific relationship between CMS and WellMed, based on the record before us *here*, is sufficient.

uncovered arises from the authority expressly delegated to it by CMS. *See* 42 U.S.C. § 1395w-22(g)(1)(A). Accordingly, the conduct Trinity challenges is directly tied to actions WellMed took under color of federal office. *See St. Charles Surgical Hosp.*, 990 F.3d at 454.

Because WellMed has established all four elements of federal officer jurisdiction, we conclude that removal was proper.[3] The district court then did not err in denying the remand motion.

## IV.    Motion to Dismiss

We next address the district court's dismissal of Trinity's claims under Rule 12(b)(1). WellMed moved to dismiss, arguing that, while removal jurisdiction was proper under § 1442(a), the district court lacks subject matter jurisdiction at this time because Trinity failed to exhaust its administrative remedies prior to filing suit. We agree.

As discussed above, the Medicare Act contains an exhaustion requirement. If an entity wishes to challenge an organization determination, it must first follow the prescribed appeal process. *See* 42 U.S.C. § 1395w-22(g); 42 C.F.R. § 422.622. This administrative process is the "sole avenue

---

[3] Trinity argues that our decision in *Rencare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004) controls the outcome here. We disagree—*Rencare* is distinguishable on several grounds. Unlike here, the parties in *Rencare* had an express contractual agreement to provide services. *Id.* at 557. Therefore, the claims necessarily implicated matters of state law. *See id.*; *see also Tenet Healthsys. GB v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 591 (11th Cir. 2017) ("[A] *contract* provider's claims are determined entirely by reference to the written *contract*, not the Medicare Act." (emphasis added)). Moreover, *Rencare* dealt with *federal question* jurisdiction, 395 F.3d at 557–58, not *federal officer* jurisdiction, which is notably broader, *see Latiolais*, 951 F.3d at 292. Finally, *Rencare*'s reasoning was based on the Medicare regulatory framework in effect at that time, which has since been replaced by a new framework altering the way MA Organizations are paid. *See* 395 F.3d at 555, 557. Thus, even if *Rencare* was not factually inapposite, it still would not bind our decision—we would still be able to analyze the effect of that new regulatory framework on the issues here.

for judicial review" of claims "arising under the Medicare Act." *Heckler*, 466 U.S. at 614–15 (internal quotation marks and citation omitted). Accordingly, a party may not bring suit in federal court to challenge an organization determination until it has exhausted its administrative remedies. 42 U.S.C. § 405(g); *see also Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012) (observing that the Medicare Act's mandatory exhaustion requirement "severely restricts the authority of federal courts").

Trinity's claims for failure to reimburse challenge "organization determinations" and thus clearly arise under the Medicare Act. *See Heckler*, 466 U.S. at 615 (concluding that a suit seeking declaration regarding whether certain claims were reimbursable "arose under" the Medicare Act); *see also Tenet Healthsys. GB v. Care Improvement Plus S. Cent. Ins. Co.*, 875 F.3d 584, 590 (11th Cir. 2017) (observing that suits related to organization determinations arise under the Medicare Act); *Nichole Med. Equip. & Supply, Inc. v. TriCenturion, Inc.*, 694 F.3d 340, 347–49 (3d Cir. 2012). Therefore, as the party carrying the burden at the Rule 12(b)(1) stage, *see Physician Hosps. of Am.*, 691 F.3d at 652, Trinity was required to offer proof of its compliance with the exhaustion requirement. Yet it wholly failed to do so. Therefore, the district court did not err in dismissing Trinity's claims without prejudice.

## V.    Jurisdictional Discovery

Finally, although not entirely clear, Trinity seems to argue that the district court abused its discretion in ordering the parties to engage in limited jurisdictional discovery. We disagree. Rather, WellMed "ma[de] a factual attack on [the] court's subject-matter jurisdiction." *Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012) (internal citation and quotation omitted). So, the district court was "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quotation omitted).

No. 22-10414

In similar situations, we have permitted district courts to order jurisdictional discovery, *see Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009), and to consider "the complaint," the "complaint supplemented by the undisputed facts as evidenced in the record," and also "the court's resolution of disputed facts," *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012), to determine whether it possessed jurisdiction. The district court did just that here. Accordingly, we conclude there was no abuse of discretion. *See also Machete Prods.*, 809 F.3d at 287 (giving deference to factual findings made by district court in order to determine jurisdiction).

## VI.

For the aforementioned reasons, we AFFIRM the district court in full.