**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1924

STATE OF WEST VIRGINIA EX REL. MARK A. HUNT, In his capacity as Auditor,

       Plaintiff – Appellee,

  v.

CAREMARKPCS HEALTH, L.L.C.,

       Defendant – Appellant,

  and

ELI LILLY AND COMPANY; NOVO NORDISK INC.; SANOFI-AVENTIS U.S., LLC; EVERNORTH HEALTH, INC., f/k/a Express Scripts Holding Company; EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS ADMINISTRATORS, LLC; MEDCO HEALTH SOLUTIONS, INC.; ESI MAIL PHARMACY SERVICES, INC.; EXPRESS SCRIPTS PHARMACY, INC.; CVS HEALTH CORPORATION; CVS PHARMACY, INC.; CAREMARK RX, L.L.C.; CAREMARK, L.L.C.; UNITEDHEALTH GROUP, INC.; OPTUM, INC.; OPTUMRX, INC.; OPTUMINSIGHT, INC.,

       Defendants.

Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling.  John Preston Bailey, District Judge.  (5:24-cv-00143-JPB)

Argued:  May 9, 2025                         Decided:  June 12, 2025

Before NIEMEYER, AGEE and THACKER, Circuit Judges.

———————————————

Reversed by published opinion.  Judge Agee wrote the opinion in which Judge Niemeyer and Judge Thacker joined.

———————————————

**ARGUED:**  Adam Joshua Podoll, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant.  Anthony J. Majestro, POWELL & MAJESTRO, PLLC, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Steven R. Ruby, Raymond S. Franks II, Jordan Damron, CAREY DOUGLAS KESSLER & RUBY PLLC, Charleston, West Virginia; Enu Mainigi, Craig D. Singer, R. Kennon Poteat III, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellant.  Christina L. Smith, POWELL & MAJESTRO PLLC, Charleston, West Virginia, for Appellee.

———————————————

2

AGEE, Circuit Judge:

Some States have raised complaints in recent years that the price of diabetes medication has increased exponentially for no lawful reason. West Virginia is the latest to file a complaint bringing only state law claims in state court against (among other defendants) CaremarkPCS Health, LLC, a pharmacy benefit manager ("PBM"), for allegedly driving up the cost of insulin through unlawful means. This appeal asks whether Caremark may remove such a suit to federal court under 28 U.S.C. § 1442(a)(1), the federal officer removal statute, based on its assertions that the conduct for which it is being sued—negotiating rebates—encompasses work it did for the United States. The district court here found that removal was unwarranted and remanded the suit to state court.

We are the third court of appeals to address some variation of this question. The first two sided with Caremark—the First Circuit in *Government of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024), and the Ninth Circuit in *California v. CaremarkPCS Health LLC*, Nos. 23-55597, 23-55599, 2024 WL 3770326 (9th Cir. Aug. 13, 2024) (unpublished but argued). West Virginia does not attempt to distinguish these cases, but simply argues that they depart from Fourth Circuit law. Not so. Those decisions align with our federal officer removal jurisprudence, so we join our sister circuits in their sound reasoning.

In short, West Virginia's complaint is connected to Caremark's federal work such that its purely state law gloss and mid-litigation disclaimers do not preclude removal under § 1442(a)(1). And because Caremark has established that it is entitled to federal officer

3

removal on the present complaint, we reverse the district court's remand decision and return this case to the district court for further proceedings.

## I.

West Virginia[1] sued Caremark[2] in state court for its role in an alleged scheme to increase the price of insulin to the state's detriment through its payment of health care benefits for state employees. Caremark is a PBM that "work[s] in concert" with drug manufacturers "to dictate the availability and price of [insulin] for most of the U.S. market" by "establish[ing] national formulary offerings (i.e., approved drug lists) that . . . set the baseline for which diabetes medications are covered and which are not." J.A. 39–40. The formularies drive drug supply and demand nationwide, so PBMs allegedly "wield enormous influence over drug prices." J.A. 40. Manufacturers pay rebates and other fees to PBMs like Caremark, which keep a portion of them before passing the rest off to health insurance plans. Among those plans are those that cover West Virginia state employees.

---

[1] John B. McCuskey filed the suit in his capacity as West Virginia's State Auditor on behalf of the state. While this appeal was pending, Mark Hunt was elected to and assumed the same office.

[2] Other Defendants include numerous other PBMs and drug manufacturers. We refer only to Caremark because it is the party that removed the case and is the appellant currently before us. A single defendant may unilaterally remove a complaint under § 1442(a)(1). *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *see* 14C Charles Alan Wright & Arthur D. Miller, *Federal Practice and Procedure* § 3726 (4th ed. 2024) ("Removal . . . is possible [under § 1442] despite the fact that none of the other defendants in the action join in the removal notice."). So when we discuss removal, we focus on Caremark only.

West Virginia alleges that it was overcharged for insulin due to Caremark and the other defendants' alleged scheme. According to the state, PBMs like Caremark and the drug manufacturers engaged in "opaque and undisclosed dealings," including "rebate negotiations," that resulted in "agreements" that "caused . . . precipitous price increases for" insulin. J.A. 47; J.A. 129; J.A. 148. The complaint brings four state-law claims against Caremark which are as follows: (1) civil conspiracy; (2) unjust enrichment; (3) fraud; and (4) breach of contract. It was filed in the Circuit Court of Marshall County, West Virginia.

Caremark removed the complaint to the Northern District of West Virginia under the federal officer removal statute, asserting that West Virginia's "sweeping allegations challenge conduct that Caremark . . . carries out under a federal officer." J.A. 12. The basis of Caremark's removal theory is that it negotiates rebates with manufacturers of insulin and other drugs jointly on behalf of all its clients. Those clients include federal clients, whose plans are governed by the Federal Employees Health Benefits Act ("FEHBA"). FEHBA, in turn, deputizes the Office of Personnel Management ("OPM") to administer FEHBA, and authorizes OPM to contract with private carriers for federal employees' benefits. OPM's agreements with these carriers are governed by a standard FEHBA contract, which explicitly "contemplates that contracts between PBMs and FEHBA carriers will include" payments to include "rebates." J.A. 14. Those rebates are subject to "various requirements on FEHBA carriers and PBMs" imposed by OPM. J.A. 14; *see* J.A. 14–17 (listing these requirements). When Caremark conducts rebate negotiations with manufacturers, it does so at one time on behalf of *all* its clients—federal, state, and private alike. Therefore, Caremark alleges, West Virginia's challenge to its conduct in rebate

5

negotiations is necessarily a challenge to conduct it undertook for FEHBA carriers, which was governed by OPM.

West Virginia moved to remand the case to state court. It argued that it "[wa]s not seeking relief relating to any federal program or any contract related to a federal program," and in fact "expressly disclaim[ed] any federal claims." J.A. 347.

The district court granted West Virginia's motion on two grounds. It first found that Caremark failed to satisfy any of the elements required for federal officer removal under § 1442(a)(1). Alternatively, it found federal officer removal improper because West Virginia "disclaimed any cause of action or remedy under federal law." *West Virginia ex rel. McCuskey v. Eli Lilly & Co.*, No. 5:24-cv-143, 2024 WL 4357749, at *8 (N.D. W. Va. Sept. 6, 2024).

Caremark timely appealed the district court's remand decision, and we have jurisdiction to review it under 28 U.S.C. § 1447(d).

## II.

We review de novo a district court's decision on whether to sustain federal officer removal. *Maryland v. 3M Co.*, 130 F.4th 380, 387 (4th Cir. 2025). As the removing party, Caremark bears the burden of convincing us that it is entitled to have its defense heard only in federal court. *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288, 297 (4th Cir. 2022). To carry that burden, the notice of removal must plausibly allege that federal jurisdiction through 28 U.S.C. § 1442(a)(1) is proper. *Maryland*, 130 F.4th at 387.

6

As relevant to our inquiry, § 1442(a)(1) "promises a federal forum for any action against an 'officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office.'" *BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230, 234–35 (2021) (quoting § 1442(a)(1)). That congressional promise is broad and mandates a liberal construction. *Maryland*, 130 F.4th at 387–88 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999), and *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147–48 (2007)).

Caremark argues the district court doubly erred in its federal officer removal determination, first in its substantive decision of whether Caremark was entitled to removal under § 1442(a)(1), and second under the threshold disclaimer question. We take these issues in inverse order.

## A.

West Virginia contends it disclaimed any federal connection by clarifying in its motion to remand to state court that its complaint "[wa]s not seeking relief relating to any federal program or any contract related to a federal program" and "expressly disclaim[ed] any federal claims." J.A. 347. The district court found those disclaimer statements effectively showed that the way the state drafted its complaint precluded federal officer removal. We disagree.

The federal officer removal statute is a unique power that renders suits against those who invoke it "exceptional" in the removal context. *Jefferson Cnty.*, 527 U.S. at 431. That's because generally, "an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit," and the basis

7

for federal jurisdiction "ordinarily must appear on the face of a properly pleaded complaint." *Id.* at 430–31. And because a "plaintiff is the master of the complaint," "the well-pleaded-complaint rule enables him, by eschewing claims based on federal law, to have the cause heard in state court." *Holmes Grp. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (cleaned up).

But that normal rule of pleading is not effective when § 1442(a)(1) applies. *Jefferson Cnty.*, 527 U.S. at 431. As the Supreme Court has recognized, the federal officer removal statute displaces "the well-pleaded complaint rule" insofar as it "allows suits against federal officers to be removed despite the nonfederal cast of the complaint." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (cleaned up). Put another way, "the right of removal under § 1442(a)(1) is made *absolute* . . . regardless of whether the suit could originally have been brought in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (emphasis added).

Applying those principles in *Maryland v. 3M Co.*, we held that we could not credit a plaintiff's purported disclaimer when doing so would "ignore[] the unique lens through which we consider federal officer removal." 130 F.4th at 389. There, we explained that "a plaintiff in the § 1442(a)(1) removal context is no longer the master of its complaint in the sense that it cannot preempt removal to a federal court merely because the complaint is glossed only in state law. Instead, we look to a defendant's well-pleaded facts of removal to see if it is entitled to a federal forum despite the 'nonfederal cast of the complaint.'" *Id.* (quoting *Kircher*, 547 U.S. at 644 n.12). Therefore, in assessing the propriety of § 1442(a)(1) removal, we "credit a removing defendant's theory of the case as to whether

8

the conduct with which it has been charged is related to its federal work," not whether a complaint includes some explicit federal connection. *Id.* (citing *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 256 (4th Cir. 2021)). For those reasons, we do not "blindly accept" a plaintiff's purported disclaimer of any federal connection as an attempt to prevent federal officer removal. *Id.*

Applying the same principles here, West Virginia has not precluded federal officer removal by crafting a complaint that facially lacks a federal connection. Caremark alleges that the conduct for which it is being charged—rebate negotiations—includes indivisible federal and non-federal conduct because it conducted those negotiations for its federal and non-federal clients at the same time. Therefore, as Caremark's theory goes, West Virginia's complaint necessarily implicates work it did for the federal government. And so, "[o]nce we credit these allegations and theory of the case for purposes of our jurisdictional inquiry, the disclaimer [i]s not effective to prevent removal." *Gov't of Puerto Rico*, 119 F.4th at 190–91 (cleaned up). And the state's mid-litigation promises of disclaimers that it would not seek to recover for Caremark's federal work changes nothing; its complaint still seeks to hold the PBM liable for indivisible rebate negotiations which includes federal government work.

Our reasoning here tracks both the First Circuit and Judge Ikuta's concurrence in the Ninth Circuit in their analogous cases, in which Puerto Rico and California, respectively, sued Caremark for the same conduct West Virginia alleges here. *See*

9

*generally Gov't of Puerto* Rico, 119 F.4th 174; *California*, 2024 WL 3770326.[3]   Both

opinions rejected similar attempts to preclude federal officer removal via purported

disclaimers. In short, West Virginia's disclaimer attempts fail "because Caremark's work

for private clients cannot be disaggregated from its work for the federal government."

*California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring). By "targeting Caremark's

rebate negotiations for private clients, [West Virginia] necessarily also targets Caremark's

rebate negotiations for the federal government (since they are the same negotiations)." *Id.*

"So, if Caremark is liable for its conduct in negotiating rebates for private clients and

FEHBA plans, then it could be liable for its conduct under OPM's direction—no matter

what the disclaimer says." *Gov't of Puerto Rico*, 119 F.4th at 191; *cf. Maryland*, 130 F.4th

at 389 ("A disclaimer that requires a state court to determine the nexus between the charged

conduct and federal authority is not a valid means of precluding removal." (cleaned up)).

At bottom, any West Virginia lawsuit that seeks to hold Caremark liable for its

rebate negotiations implicates conduct it undertook for the federal government under

Caremark's determinative theory of the case. *See California*, 2024 WL 3770326, at *2

---

[3] The Ninth Circuit's opinion is a cursory unpublished opinion that held that California's disclaimer, "as written," did not "necessarily defeat removal[] because the rebate negotiations remain causally connected to the dispute." *California*, 2024 WL 3770326, at *1. That reasoning applies here as well. Nevertheless, we are more persuaded by Judge Ikuta's concurrence, which observed that the majority "err[ed] in concluding that a more carefully drafted disclaimer would defeat removal." *California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring). Judge Ikuta explained that "no disclaimer, however worded, [could] help California" preclude federal officer removal. *Id.* at *2.

(Ikuta, J., concurring); *Gov't of Puerto Rico*, 119 F.4th at 190–91. West Virginia's purported disclaimers are therefore ineffective.[4]

B.

Having determined that West Virginia's purported disclaimers and nonfederal cast of its complaint do not preclude federal officer removal, we must decide whether Caremark is entitled to defend itself in a federal forum under § 1442(a)(1). Caremark is so entitled if its notice of removal plausibly alleges "(1) that it acted under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for or in relation to the asserted official authority." *Anne Arundel Cnty.*, 94 F.4th at 347–48 (cleaned up).

---

[4] At oral argument, West Virginia made a last-ditch effort to keep this complaint in state court. It stated that it intended to take up an "offer" the Court gave the Plaintiff-States in *Maryland v. 3M Co.* and "agree[d] to waive any claims with respect to insulin price and limit[] their claim against Caremark only to rebates, to the separate contract that has no federal interest, separately negotiated, there is no difficult [] causation questions to be handled by the state court." Oral Arg. 14:51.

Without considering whether such a disclaimer would be effective, that effort fails because it relies on a faulty premise—it reads our decision in *Maryland* incorrectly. We did not "offer" the States there a chance to amend their complaint on the fly to waive claims that had a federal connection. We simply asked if they intended to make a similar concession as a different state had in a recent case from a different circuit court that bore some similarities to the claims at issue there. *Maryland*, 130 F.4th at 392. The federal officer removal question turns on the defendant's notice of removal, and the conduct that is charged in a complaint. *See id.* at 387; *Anne Arundel Cnty. v. BP P.L.C.*, 94 F.4th 347–48 (4th Cir. 2024). We are unaware of any precedent suggesting that a party can amend their complaint on the fly at oral argument. It follows that to effect a mid-litigation disclaimer of federal claims so as to preclude federal officer removal, a party must amend their complaint. *E.g.*, *Wood v. Crane Co.*, 764 F.3d 316, 320 (4th Cir. 2014).

11

First, we observe the district court's decision to credit West Virginia's attempts to sever any federal ties from its complaint over Caremark's theory of removal stained its analysis on each federal officer removal element. That error led to incorrect conclusions and compels us to reverse the district court's findings on each element. Accordingly, Caremark is entitled to remove this complaint to federal court under § 1442(a)(1).

1.

Section 1442(a)(1)'s use of the "phrase acting under describes the triggering relationship between a private entity and a federal officer." *Mayor & City Council of Balt. v. BP P.L.C.*, 31 F.4th 178, 228 (4th Cir. 2022) (cleaned up). Though that phrase must, like the rest of the statute, benefit from a broad interpretation, it is not "limitless"—"in cases involving a private entity, the acting under relationship requires that there at least be some exertion of subjection, guidance, or control on the part of the federal government." *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 251 (cleaned up).

To "act under" a federal officer, a private company "must be engaging in an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* (cleaned up). Simply complying with federal law does not satisfy the inquiry, but "a private contractor may" "act under" a superior federal entity "when the relationship is an unusually close one involving detailed regulation, monitoring, or supervision." *Id.* (cleaned up). That said, and relevant to some of West Virginia's arguments here, a private company doesn't "act under" the federal government simply by selling "off-the-shelf" goods and services to it. *See Mayor & City Council of Balt.*, 31 F.4th at 229–31.

12

Caremark's notice of removal satisfies the "acting under" element. FEHBA establishes a comprehensive health insurance program for federal employees and gives OPM administrative authority over that program. *See Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 91 (2017). Through FEHBA, Congress also permits OPM to enlist private FEHBA carriers for help administering the program. 5 U.S.C. § 8902(a). Caremark, as a PBM, alleges that it "administers health benefits for federal employees pursuant to contracts with FEHBA carriers." J.A. 20. And it does so under OPM's supervision, as OPM permits FEHBA carriers to contract with PBMs, but only subject to contractual requirements imposed by OPM. *See* J.A. 20–21; J.A. 14–16 (outlining how OPM supervises PBMs like Caremark). Indeed, Section 1.28 of the Standard Contract imposes "Standards for [PBM] Arrangements," including, among other requirements, that PBMs like Caremark use "pass-through transparent pricing based on the PBM's cost for drugs (as described below) in which the Carrier receives the value of the PBM's *negotiated . . . rebates*." J.A. 230–31 (emphasis added). And under the Standard Contract, OPM may "review and receive any information and/or documents the Carrier receives from PBM." J.A. 232.

Though FEHBA carriers are the middlemen between OPM and PBMs like Caremark in this arrangement, "the absence of a direct contractual relationship with the federal government is not a bar to removing an action under § 1442(a)(1)." *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 254 (cleaned up). At bottom, OPM "exert[s]" some control over Caremark, reserves the right to "monitor[]" and "supervis[e]" the otherwise private party, all while Caremark "help[s] carry out" OPM's "duties" to administer health

13

insurance under FEHBA. *See id.* (cleaned up); *see also Gov't of Puerto Rico*, 119 F.4th at 190 ("OPM exercised detailed supervision and monitoring over Caremark's provision of PBM services to FEHBA carriers, such that Caremark was acting under federal authority when it negotiated rebates.").

2.

We next ask if Caremark's notice of removal shows it has a "colorable federal defense" to West Virginia's lawsuit. *Anne Arundel Cnty.*, 94 F.4th at 347 (quoting *Mayor & City Council of Balt.*, 31 F.4th at 228). A colorable federal defense is one that "is defensive and based in federal law," and that "arise[s] out of a defendant's official duties." *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 254 (cleaned up).

A removing defendant faces a low bar to show that his federal defense is colorable. Because "the purpose of [§ 1442(a)(1)] is to secure that the validity of the defense will be tried in federal court," the federal defense "need not be clearly sustainable." *Id.* (cleaned up). To be "colorable," rather, it "must only be plausible." *Id.*; *see also W. Va. State Univ. Bd. of Governors*, 23 F.4th at 297 ("Proof of a colorable federal defense does not require the defendant to win his case before he can have it removed nor even establish that his defense is clearly sustainable." (cleaned up)); *Gov't of Puerto Rico*, 119 F.4th at 186 ("A federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." (cleaned up)).

Caremark sets out two federal defenses to satisfy this element, arguing that federal law expressly or indirectly preempts West Virginia from holding Caremark liable for conduct that is authorized by FEHBA. At this budding stage of litigation, and with no view

14

on the likelihood of success of either defense, we agree with the First Circuit that Caremark's express federal preemption defense is colorable.[5] *Gov't of Puerto Rico*, 119 F.4th at 190.

FEHBA's text provides that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payment with respect to benefits) shall supersede and preempt any State or local law . . . which relates to health insurance or plans." 8 U.S.C. § 8902(m)(1). As explained in the previous section, OPM's Standard Contract with FEHBA carriers includes terms that govern how PBMs like Caremark interact with FEHBA carriers and OPM in rebate negotiations. So Caremark alleges that the conduct with which it is charged—negotiating rebates—is permitted, if not required, under FEHBA. If that conduct is permitted under federal law, it follows that Caremark may not be held liable for it. *See, e.g.*, *Hillsborough Cnty. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 712–13 (1985) (discussing preemption generally). We don't yet know whether this preemption defense will ultimately succeed, but it is at least "plausible," *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 254, so Caremark "is entitled to have a federal court weigh in on the validity of that defense," *Gov't of Puerto Rico*, 119 F.4th at 190.

### 3.

Last, we ask if Caremark has satisfied the "related to" element. Sometimes called the federal "nexus or connection requirement," this element requires Caremark to "show it

---

[5] Because we find the express preemption defense is colorable, we do not address Caremark's obstacle preemption defense.

15

is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority." *Maryland*, 130 F.4th at 389 (quoting *Anne Arundel Cnty.*, 94 F.4th at 349). When considering whether the requisite connection exists, we credit the defendant's theory of the case. *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 256. Here, too, the bar is fairly low as "a removing defendant need not establish 'an airtight case on the merits in order to show the required . . . connection.'" *Maryland*, 130 F.4th at 389 (quoting *Jefferson Cnty.*, 527 U.S. at 432).

West Virginia seeks to hold Caremark liable for its role in an alleged conspiracy to inflate the price of insulin. That role, as alleged, involved negotiating certain rebates in contracts with drug manufacturers. Caremark asserts that its negotiations resulted in rebates for *all* of its clients—federal and nonfederal—such that "a key component of the conduct that [West Virginia] challenges is invisible as between Caremark's FEHBA clients and its other clients." J.A. 22. In other words, Caremark's theory of the case is that West Virginia attempts to hold them liable for a single negotiation that was undertaken for all its clients—federal and non-federal alike. Under its determinative theory, therefore, Caremark's indivisible negotiation is "related to" its role in administering federal benefits under FEHBA.

We, like the First Circuit and Judge Ikuta, agree that Caremark satisfies the federal nexus element under its theory of the case. *See Gov't of Puerto Rico*, 119 F.4th at 190–92; *California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring). As Judge Ikuta explained, that theory means that "if Caremark were liable for negotiating rebates on behalf of private clients, it would necessarily also be liable for negotiating rebates on behalf of the federal

government—because it is the same negotiation." *California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring); *see Gov't of Puerto Rico*, 119 F.4th at 190 (concluding the "charged conduct is related to acts Caremark performed" for the federal government for the same reasons). That "means there is necessarily a . . . connection between Caremark's negotiations for the federal government and [West Virginia's] claims." *California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring).

****

For all these reasons, we find Caremark may defend itself against this complaint in federal court.

III.

Caremark is entitled to remove this complaint to federal court under 28 U.S.C. § 1442(a)(1) and the district court erred in holding otherwise. The district court's judgment is therefore reversed.

*REVERSED*