# United States Court of Appeals

### For the Eighth Circuit

_____

No. 25-1165
_____

Tim Griffin, Attorney General, State of Arkansas, ex rel,

*Plaintiff - Appellee*,

v.

Optum, Inc.,

*Defendant*,

OptumRx, Inc.,

*Defendant - Appellant*,

OptumInsight Life Sciences, Inc.; Optum Insight, Inc.; UnitedHealth Group, Inc.;
Lewin Group, Inc.; EverNorth Health, Inc.,

*Defendants,*

Express Scripts, Inc.,

*Defendant - Appellant*,

Express Scripts Administrators, LLC,

*Defendant*,

ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.,

*Defendants - Appellants*,

Express Scripts Specialty Distribution Services, Inc.; Medco Health Solutions,

*Defendants*.

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: November 20, 2025
Filed: May 6, 2026

_____

Before COLLOTON, Chief Judge, SHEPHERD and ERICKSON, Circuit Judges.

_____

COLLOTON, Chief Judge.

The State of Arkansas sued OptumRx, Inc., Express Scripts, Inc., ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc., in Arkansas state court, alleging that the companies were responsible for contributing to an opioid epidemic. The companies removed the case to federal court, but the district court granted the State's motion to remand to state court. We conclude that removal was proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and therefore reverse the judgment.

I.

OptumRx, Inc. and Express Scripts, Inc. are pharmacy benefit managers. Pharmacy benefit managers enter into service agreements with their clients—federal and non-federal sponsors of health insurance plans—to administer prescription drug

programs. As part of their services, the managers develop formularies, which are lists of prescription drugs covered by a health plan.

Central to this process are rebate negotiations conducted between the pharmacy benefit managers and drug manufacturers. Because drugs excluded from a health plan's formulary must be purchased out-of-pocket by consumers, drug manufacturers seek to have their drugs included on formularies. *See Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180 (1st Cir. 2024). To further that purpose, manufacturers pay rebates—post-sale discounts calculated based on the number of consumers that fill a prescription for the manufacturer's drug—and other fees to the managers. *Id.* The managers keep a portion of the rebates and fees before conveying the remainder to health insurance plans. *Id.*

Pharmacy benefit managers also "serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83-84 (2020). When a beneficiary of a prescription-drug plan attempts to fill a prescription at a pharmacy, the manager determines the beneficiary's coverage and copayment information. *Id.* at 84. Essentially, the managers "operate as middlemen between pharmaceutical manufacturers, plan sponsors, pharmacies, and consumers." *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 848 (8th Cir. 2020).

ESI Mail Pharmacy Service, Inc. and Express Scripts Pharmacy, Inc. are pharmacies that fill opioid prescriptions. *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 248 (4th Cir. 2021). They are subcontractors who administer and operate the mail-order pharmacy under a contract between Express Scripts and the Department of Defense. *Id.* at 247 & n.2.

The State sued the defendants in state court, alleging that they caused and contributed to "the worst man-made epidemic in modern medical history: the misuse,

abuse, diversion, and over-prescription of opioids." The State brought claims asserting a public nuisance, negligence, and unjust enrichment under state law.

The companies removed the case to federal court and relied first on the federal officer removal statute. *See* 28 U.S.C. § 1442(a)(1). The defendants maintained that the State seeks to hold them liable for actions taken at the direction of federal officers in administering federal health care programs. Alternatively, the defendants relied on the general removal statute, *see* 28 U.S.C. §§ 1441(a), 1331, and argued that the State's nuisance and negligence claims implicate a substantial federal issue that justified removal based on federal jurisdiction. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The State moved to remand the case to state court. The motion argued that removal was improper because the complaint "disclaims" all federal claims, including claims against "any federal officer or person acting under any office of the United States for or relating to any act under color of such office." The district court believed that the State's disclaimers presented "a close call," but concluded that there is "no scenario where Defendants could be liable based on its involvement with the federal government." The court also rejected reliance on the general removal statute. The court thus granted the motion and remanded the case to state court. We review the decision *de novo*. *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021).

II.

The federal officer removal statute "is an exception to the well-pleaded complaint rule, under which (absent diversity) a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case arises under federal law." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (internal quotation omitted). This removal statute should be liberally construed, *Watson v.*

-4-

*Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007), and "the typical presumption against removal does not apply." *Buljic*, 22 F.4th at 738.

The statute's basic purpose is to protect the federal government from interference with its operations that would ensue if a State were able to hail into state court certain officers and agents of the federal government acting within the scope of their authority. *See Watson*, 551 U.S. at 150. "State-court proceedings may reflect local prejudice against unpopular federal laws or federal officials." *Id.* (internal quotation omitted). And "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

To remove a case under the federal officer removal statute, the defendants must establish that (1) they are "persons" within the meaning of § 1442(a)(1); (2) they acted under the direction of a federal officer; (3) there is a sufficient connection between those acts and the State's claims for relief; and (4) they have a colorable federal defense to the State's claims. *See Minnesota v. Am. Petroleum Inst.*, 63 F.4th 703, 714 (8th Cir. 2023). Removal is proper if any one defendant satisfies these elements as to any one of the State's claims. *See* 14C *Wright & Miller's Federal Practice & Procedure* § 3726, at 41 & n.82.50 (4th ed. Supp. 2025); *see also Puerto Rico*, 119 F.4th at 185 ("[I]f a single defendant properly removes under § 1442, the entire action, with all defendants, must be removed to federal court."). In evaluating the propriety of removal, we must credit the defendants' theory of the case. *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999).

The State does not deny that the defendant corporations are "persons" under the statute. *See Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1230 n.3 (8th Cir. 2012). Nor does the State dispute that the defendants would have a colorable federal defense. The fighting issues are whether the defendants acted under the direction of

-5-

a federal officer and, if so, whether there is a sufficient connection between those acts and the State's claims.

Defendants must establish that they were "acting under" a federal officer. *See* § 1442(a)(1). "The words 'acting under' are broad, and . . . must be 'liberally construed.'" *Watson*, 551 U.S. at 147 (quoting *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). A private person will act under a federal officer when the person assists or helps the federal officer carry out "basic governmental tasks" while under the government's "subjection, guidance, or control." *See id.* at 151-53; *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1043 (8th Cir. 2023); *Buljic*, 22 F.4th at 738. Carrying out "basic governmental tasks" includes providing "the government with a product that it needed or perform[ing] a job that the government would otherwise have to perform." *Buljic*, 22 F.4th at 739; *see Watson*, 551 U.S. at 153-54.

We conclude that the defendant companies acted under the direction of federal officers. As parties who act as "government middlemen and deliver federal benefits to federal beneficiaries," the defendants assisted the federal government in carrying out basic governmental tasks. *BJC Health Sys.*, 89 F.4th at 1043-45.

Express Scripts, at a minimum, acted under the direction of the Office of Personnel Management (OPM). The Federal Employees Health Benefits Act (FEHBA) established a comprehensive program of health insurance for federal employees. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006). Congress enacted FEHBA to improve the position of the government with respect to private companies in recruiting the best talent. *Jacks*, 701 F.3d at 1232-33. To achieve that purpose, Congress sought to establish a partnership between the OPM and private carriers. *Id.* at 1233; *see* 5 U.S.C. § 8902(a). The OPM contracts with private carriers and authorizes the carriers to subcontract with pharmacy benefit managers to provide coverage. The managers negotiate with manufacturers to obtain discounts, often in the form of rebates, for the drugs that are ultimately included on

the plan's formulary. When the managers negotiate with drug manufacturers, they play a key role in the OPM's effort to carry out its duties under FEHBA to provide prescription drug benefits. *Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 165 F.4th 999, 1005 (6th Cir. 2026). Accordingly, the managers perform a basic governmental task by "perform[ing] a task that the government itself would otherwise have to perform." *Id.*

Express Scripts was also under the "subjection, guidance, or control" of the Office of Personnel Management. *See id.*; *West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 197-98 (4th Cir. 2025). Express Scripts is subject to regulations the OPM established to govern pharmacy benefit managers, *see, e.g.*, 48 C.F.R. §§ 1604.7201, 1602.170-16(a), 1652.246-70, and guidelines issued by the Office to govern a variety of topics, such as "transparency standards regarding prescription drug benefits." *See* Off. of Pers. Mgmt., Letter No. 2024-02, FEHB Program Carrier Letter, at 1 (Jan. 25, 2024). The OPM mandates terms in the subcontracts between private carriers and the managers, including that the subcontracts "must include contract terms related to having access to information at each claim and aggregate level" between the managers and pharmacies. *Id.* at 3; *see Yost*, 165 F.4th at 1005; *Hunt*, 140 F.4th at 197. The OPM may monitor the performance of Express Scripts by auditing its work. *See, e.g.*, 48 C.F.R. § 1652.246-70. According to the notice of removal, these audits include "reviews of quarterly rebate guarantees, annual reconciliation and payments, actual billing and allocation of rebates, administrative fees, claim payments, fraud and abuse standards, performance guarantees, pharmacy rebates, and even site visits."

To satisfy the requirements for removal, the defendants also must establish that acts taken under the direction of a federal officer "relate to" their challenged conduct. *See Chevron USA, Inc. v. Plaquemines Parish*, No. 24-813, 2026 WL 1040461, at *5-6 (U.S. Apr. 17, 2026). "The phrase 'relating to' sweeps broadly," and "a removing defendant need not show that his federal duties specifically required or strictly caused

-7-

the challenged conduct." *Id.* at *6. It is sufficient that a defendant plausibly alleges "a close relationship between its challenged conduct and the performance of its federal duties." *Id.*

Here, the defendants' actions allegedly taken under the direction of federal officers sufficiently relate to their challenged conduct. The State asserts claims based on rebate negotiations conducted by the pharmacy benefit managers, and these negotiations proceeded under the direction of the OPM. *See, e.g.*, Compl. ¶ 32(b).

The State contends, however, that allegations concerning rebate negotiations are merely "generalized background statements." On this view, the allegations do not challenge the rebate negotiations themselves or the payment of the rebates.

We find this characterization unpersuasive. The State alleges that the defendants' "specific conduct"—including "colluding with . . . opioid manufacturers to increase opioid sales through favorable placement on national formularies in exchange for rebates and fees"—contributed to the opioid epidemic. *Id.* ¶ 32(b).

The State claims that the rebates and fees induced the alleged collusion. For example, the State asserts that the defendants "were so determined to increase their profits through rebates . . . that they simply ignored their own data and other evidence of societal harm." *Id.* ¶ 183. As part of each claim for relief, the State "repeats and realleges the preceding paragraphs" of the complaint. *See id.* ¶¶ 186, 252, 273. And the complaint includes specific allegations concerning rebate negotiations within the section labeled "claims for relief." *See id.* ¶¶ 199, 201, 210, 264. In support of a public nuisance claim, for example, the State alleges that the defendants' "conduct substantially contributed to the creation and maintenance of a public nuisance by facilitating and encouraging the use of dangerously addictive opioids." *Id.* ¶ 199. The State alleges that the defendants facilitated and encouraged the use of opioids by

"declining to impose limits on their approval for use in exchange for payments and fees from manufacturers." *Id.*

A different section of the complaint is labeled "factual allegations common to all claims." Within that section, the complaint alleges that the defendants "negotiated rebate payments, fees, and other incentives from opioid drug manufacturers in exchange for preferential placement of their drugs on PBM formularies." *Id.* ¶ 133. The State alleges that the defendants "failed to take any reasonable actions in response to the opioid crisis because they were incentivized by payments from opioid manufacturers." *Id.* ¶ 173. Thus, the complaint does not discuss rebate negotiations "merely to build atmosphere"; the State's theory of liability is based on both the rebate negotiations and the resulting payments. *See Yost*, 165 F.4th at 1008.

The State contends that there is no basis for removal, however, because the complaint "disclaims" all claims of relief for the defendants' actions under a federal officer. As the State is "the master of the complaint," a complaint "excising all federal claims destroys federal jurisdiction." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 35, 39 (2025). Here, the State's disclaimer reads as follows:

> In addition, under no circumstances is the State bringing this action against, or bringing an action or claim of any kind directed to, any federal officer or person acting under any office of the United States for or relating to any act under color of such office. Nothing in this Complaint raises such an action, and to the extent that anything in the Complaint could be interpreted as potentially bringing an action against or directed to any federal officer or person acting under any office of the United States for or relating to any act under color of such office, then all such claims, actions, or liability, in law or in equity, are denied and disavowed in their entirety.

Compl. ¶ 49. Another disclaimer states:

The Complaint does not confer jurisdiction upon the federal courts pursuant to 28 U.S.C. § 1442(a)(1). The State makes no allegations against "[t]he United States or any agency thereof or any office (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

*Id.* ¶ 117 (alteration in original) (emphases omitted).

On appeal, the State also argues that its post-removal "reassertion" of the disclaimers "reaffirmed that it was not seeking to hold Defendants liable for any federal transaction" and "specifically disclaimed and disavowed claims concerning Defendants' administration of PBM services." At oral argument, counsel asserted that the State is "not relying on the rebate negotiations to seek liability." The district court concluded that the disclaimers defeated removal because the complaint "unambiguously disclaims any claims or relief upon which federal-officer removal could be based."

We respectfully disagree, because "no disclaimer, however worded, can help [the State] avoid a causal nexus between [Express Scripts, Inc.'s] conduct on behalf of the federal government and [the State's] claims." *California v. CaremarkPCS Health LLC*, No. 23-55597, 2024 WL 3770326, at *2 (9th Cir. Aug. 13, 2024) (Ikuta, J., concurring in the judgment) (mem.). Under the defendants' theory of the case, *see Jefferson County*, 527 U.S. at 432, Express Scripts conducts rebate negotiations indivisibly for both plans under the FEHBA and plans outside of the FEHBA. Express Scripts does not have separate rebate agreements with drug manufacturers for FEHBA and non-FEHBA plans, and none of the resulting discounts or rebates from the negotiations are exclusive to either FEHBA or non-FEHBA plans. If Express Scripts "were liable for negotiating rebates on behalf of private clients, it would necessarily also be liable for negotiating rebates on behalf of the federal government—because it is the same negotiation." *CaremarkPCS Health*, 2024 WL

3770326, at *2 (Ikuta, J., concurring in the judgment). Therefore, the State's disclaimers do not, and could not, waive claims based on Express Scripts's rebate negotiations undertaken on behalf of both the federal government and private clients.

For these reasons, the defendants have established that removal was proper under the federal officer removal statute, and we need not address whether the case was properly removable under the general removal statute as well. The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings.

_____